UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20451-CR-ALTONAGA/REID

18 U.S.C. § 1344
18 U.S.C. § 982(a)(2)

UNITED STATES OF AMERICA

vs.

DORA AMENEIRO MARTINEZ,
   a/k/a "Dora Ameneiro,"
   a/k/a "Dora Martinez,"
   a/k/a "Dora Castaneda,"

   Defendant.
_____/

FILED BY ___MP___ D.C.
Nov 17, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At various times relevant to this Information:

#### The Defendant and Relevant Entities

1. Bank 1 was a financial institution, with its principal place of business in New York with offices located in the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

2. Bank 2 was a financial institution, with its principal place of business in California with offices located in the State of Florida, whose accounts were insured by the FDIC.

3. Mortgage Lender 1 was a financial institution, with its principal place of business in New York doing business in the State of Florida and elsewhere, as a mortgage lending business, as defined in 18 U.S.C. 27, that engaged in interstate commerce and provided short-term loans secured by interests in residential properties.

4. Homeowner 1 was an individual whose identity was used to refinance an existing Bank 2 mortgage loan encumbering the property located at 8930 NW 15th Court, Pembroke Pines, Florida.

5. The term "closing" referred to the legal event at which the transfer of an interest in real estate from seller to buyer formally took place, as well as the point at which funds were transferred between the various parties, such as from the lending institution to the buyer or to the seller on the buyer's behalf, which transfer was often accomplished by temporarily passing the funds through an intermediary referred to as a "title company," "settlement agent," or "closing agent."

6. The term "mortgage" was used in the real estate industry to refer to a loan to finance the purchase of real estate property, usually with specified payment periods and interest rates, in which the borrower/mortgagor gave the lender/mortgagee a lien on the property as collateral for the loan.

7. The term "lender" referred to mortgage lenders, which extended mortgage loans and disbursed mortgage loan proceeds to fund the financing of residential properties. The lender was also referred to as the "lien holder."

8. Settlement agents were required to prepare a Closing Disclosure for approval by the mortgage lender. The Closing Disclosure itemized all aspects of the closing for the lender and required certain disclosures, including any payments made by the borrower, money due to the seller, and any fees paid to third parties in connection with the closing. The Closing Disclosure also reflected the prorations, escrow deposits, the seller's mortgages to be paid off if applicable, and miscellaneous obligations to be paid off. Mortgage lenders relied on the information in the Closing Disclosure.

9. A title company had the responsibility to verify that the title to the real estate was legitimately given to the homebuyer. The title company was supposed to make certain that a seller had the right to sell the property to a buyer. The title company's responsibilities included: reviewing title to the property, issuing title insurance policies, facilitating closings, disbursing funds as reflected on the settlement statement, and filing and recording documentation relating to the sale of the property.

10. Real property closings are generally overseen by a closing or escrow "agent." A closing agent is an individual or company that oversees the consummation of a mortgage transaction at which the note and other legal documents are signed and the loan proceeds are disbursed and fees collected are disbursed. Title companies, attorneys, settlement agents, and escrow agents can perform this service depending on the laws of the jurisdiction where the property is located. Closing instructions are specific instructions prepared by a lender and/or underwriter to direct exactly how a mortgage closing transaction is handled from start to finish. Closing agents are obligated to follow the lender's specific closing instructions.

11. A purchase of real property using financing generally begins with the borrower completing a Uniform Residential Loan Application Form 1003 (mortgage application) with the assistance of a mortgage broker or a lender's representative. The mortgage application contains material information about the borrower's employment and income, assets and liabilities, cash available, and whether the property is to be the primary residence, second home, or investment. The information on the mortgage application is relied upon when the lender is evaluating the credit worthiness of the borrower.

12. Apex Title Agency Incorporated ("Apex Title") was a Florida corporation with its principal place of business listed as 54 Ranch Trail Rd, Haines City, FL 33844. Apex Title was owned and operated by Defendant **DORA AMENEIRO MARTINEZ**.

13. Apex Capital Funding, Inc. ("Apex Capital") was a Florida corporation with its principal place of business listed as 54 Ranch Trail Rd, Haines City, FL 33844. Apex Capital was owned and operated by Defendant **DORA AMENEIRO MARTINEZ**.

14. Defendant **DORA AMENEIRO MARTINEZ** was a resident of Polk County, Florida, and a licensed real estate title agent who conducted business in Miami-Dade County, in the Southern District of Florida, and elsewhere. **MARTINEZ** was the title agent that was responsible for distributing the proceeds from loans for the properties named in this Information, and she owned and operated Apex Title and Apex Capital.

## COUNTS 1-2
## BANK FRAUD
## (18 U.S.C. § 1344)

1. Paragraphs 1 through 14 of the General Allegations section of this Information are re-alleged and fully incorporated herein by reference.

2. Beginning in or around June 10, 2019, and continuing through in or around July 11, 2022, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**DORA AMENEIRO MARTINEZ,**
a/k/a "Dora Ameneiro,"
a/k/a "Dora Martinez,"
a/k/a "Dora Castaneda,"

did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Bank 1, Bank 2, and Mortgage Lender 1, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, attempt to execute, and cause the execution of, a scheme and

4

artifice to obtain moneys and funds owned by, and under the custody and control of, one or more said financial institutions by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2).

## PURPOSE OF THE SCHEME AND ARTIFICE

3. It was the purpose of the scheme and artifice for **DORA AMENEIRO MARTINEZ** to unlawfully enrich herself by, among other things: (a) using her real estate title company Apex Title to falsely and fraudulently obtain financing on encumbered residential properties in Miami-Dade County, Florida, and elsewhere; (b) causing false and fraudulent mortgage loan applications, closing documents and other related loan documents to be created and submitted to lenders; (c) causing the lenders to loan more money than they otherwise would have loaned by preparing, and submitting to the lenders, false and fraudulent closing statements; (d) falsely and fraudulently applying for and processing mortgage refinancing loans, and failing to satisfy the existing mortgages as promised; (e) falsely and fraudulently concealing existing mortgages from lenders, thereby causing lenders to loan money that was secured by property that was encumbered with existing mortgages; and (f) diverting the proceeds of the scheme for her own personal use and benefit, and to further the fraud scheme.

## THE SCHEME AND ARTIFICE

The manner and means by which the defendant sought to accomplish the purpose of the scheme and artifice, included, among others, the following:

4. **DORA AMENEIRO MARTINEZ** caused to be prepared false and fraudulent mortgage applications and other related documents on behalf of herself, Apex Title, Apex Capital, and other homeowners. The mortgage applications and related documents, which were submitted

5

to lenders, contained materially false and fraudulent statements and representations relating to existing mortgages on the properties, including as to employment, income, deposits, assets, liabilities, and other information necessary for the lenders to assess the qualifications to borrow money. The false and fraudulent documents were used to induce the lenders to fund mortgage loans on properties in the Southern District of Florida and elsewhere.

5. As part of the closing process, **DORA AMENEIRO MARTINEZ** prepared, and caused to be prepared, and submitted to lenders false and fraudulent Closing Disclosures that falsely stated, among other things, that the properties were free and clear and had no existing mortgages, and caused the new lenders to be placed in an inferior lien position to the existing lenders.

6. Having received the false and fraudulent mortgage applications and related documents submitted by **DORA AMENEIRO MARTINEZ**, the lenders approved the fraudulent loan applications and wired the loan proceeds to Apex Title in Polk County, Florida, for distribution at the closings of the purported real estate transactions.

7. **DORA AMENEIRO MARTINEZ** intentionally failed to record the new mortgages with the clerk of court causing some of the mortgage loans extended by the lenders to be unsecured for months. In some instances, **MARTINEZ** would delay recording the new mortgages in order to obtain additional fraudulent loans, and in another, **MARTINEZ** filed a fraudulent satisfaction of mortgage to obtain additional fraudulent loans.

8. If the mortgage applications were for refinancing existing mortgages, **DORA AMENEIRO MARTINEZ**, through Apex Title, falsely and fraudulently represented to a financial institution, Bank 1, that the existing mortgages on certain properties would be satisfied with loan proceeds furnished by Bank 1. As part of the closing process, **MARTINEZ** prepared

and caused to be prepared Closing Disclosures that falsely represented that the loan proceeds furnished at the real estate closing would be used to satisfy existing mortgages on the properties in the transactions. Instead of using the loan proceeds to satisfy the existing mortgage, **MARTINEZ** fraudulently diverted the funds for her personal use and benefit and to further the fraud scheme.

9. At or near the time of the closings, **DORA AMENEIRO MARTINEZ** caused fraudulent payments and disbursements to be made from the mortgage loan proceeds, and also fraudulently diverted loan proceeds from the sales transactions for her own personal benefit and to further the fraud scheme. Over the course of the scheme, **MARTINEZ** fraudulently caused lenders, including Bank 1 and Mortgage Lender 1, to fund approximately $6,500,000.00 in loans.

## EXECUTION OF THE SCHEME AND ARTIFICE

10. On or about the dates specified below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant, **DORA AMENEIRO MARTINEZ**, as specified below, did execute, attempt to execute, and cause the execution of, the aforesaid scheme and artifice to defraud, as more particularly described below:

| COUNT | APPROX. DATE | ACT IN EXECUTION OF THE SCHEME AND ARTIFICE |
|---|---|---|
| 1 | 10/21/2020 | Submission of fraudulent mortgage loan application, closing disclosure, and related documents in the name of Homeowner 1 to Bank 1, for the purpose of obtaining a mortgage loan in the amount of approximately $173,000.00 in connection with refinancing of the existing $152,136.19 mortgage loan held by Bank 2 on Homeowner 1's property located at 8930 NW 15th Court, Pembroke Pines, Florida. |
| 2 | 7/1/2021 | Submission of fraudulent mortgage loan application, closing disclosure, and related documents in the name of Apex Capital to Mortgage Lender 1, for the purpose of obtaining a mortgage loan in the amount of approximately $200,000 in connection with the property located at 9381 E Bay Harbor Drive, Unit 701N, Bay Harbor Islands, FL. |

In violation of Title 18, United States Code, Sections 1344(1) and (2).

## FORFEITURE
## (18 U.S.C. § 982(a)(2))

1. The allegations of this Information are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which **DORA AMENEIRO MARTINEZ** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Sections 1344 or 1343, as alleged in this Information, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

All pursuant to Title 18, United States Code, Section 982(a)(2)(B), and the procedures set forth at Title 21, United States Code, Section 853, made applicable by Title 18, United States Code, Section 982(b).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

MANOLO REBOSO
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

DORA AMENEIRO MARTINEZ, a/k/a
Dora Ameneiro, a/k/a Dora Martinez, a/k/a
Dora Castaneda,
                        /
            Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☒ 0 to 5 days          ☐ Petty
   II  ☐ 6 to 10 days         ☐ Minor
   III ☐ 11 to 20 days        ☐ Misdemeanor
   IV  ☐ 21 to 60 days        ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _____
Manolo Reboso
Assistant United States Attorney
FL Bar No.   75397

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** **DORA AMENEIRO MARTINEZ, a/k/a Dora Ameneiro, a/k/a Dora Martinez, a/k/a Dora Castaneda**

**Case No:**

Count #: 1

Bank Fraud

Title 18, United States Code, Section 1344

*Max. Term of Imprisonment: Thirty (30) years
*Mandatory Min. Term of Imprisonment (if applicable):
*Max. Supervised Release: Three (3) years
*Max. Fine: $1,000,000

Count #: 2

Wire Fraud

Title 18, United States Code, Section 1343

*Max. Term of Imprisonment: Twenty (20) years
*Mandatory Min. Term of Imprisonment (if applicable):
*Max. Supervised Release: Three (3) years
*Max. Fine: $250,000

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.